UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| STEPHANIE A. GILLIARD, | : | | |
| --- | --- | --- | --- |
| Plaintiff, | : | Civil Action No.: | 16-2007 (RC) |
| v. | : | Re Document No.: | 69 |
| JELENA MCWILLIAMS, *Chairman*, *Federal Deposit Insurance Corporation, et al.*, | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION TO SEAL

## I. INTRODUCTION

Stephanie Gilliard filed this lawsuit against the Chairman of the Federal Deposit Insurance Corporation ("FDIC") and other FDIC employees, alleging racial discrimination, a hostile work environment, retaliation, and other claims. Ms. Gilliard and the FDIC eventually agreed on a settlement, and the case was dismissed with prejudice. Now, Ms. Gilliard claims that the public availability of the case has impeded her employment opportunities, so she has asked the Court to seal the entire action. As the Court will explain below, however, there is no legal basis for sealing a case under these circumstances. Ms. Gilliard's motion to seal is therefore denied.

## II. FACTUAL BACKGROUND

The Court presumes familiarity with its prior opinions in this matter. *See Gilliard v. Gruenberg (Gilliard I)*, 302 F. Supp. 3d 257 (D.D.C. 2018); *Gilliard v. McWilliams (Gilliard II)*, 315 F. Supp. 3d 402 (D.D.C. 2018). This opinion therefore provides only the facts and allegations that are relevant to the pending motion.

Ms. Gilliard worked at the FDIC as a Senior Administrative Specialist ("SAS") in the Administrative Management Section ("AMS"), Strategic Planning, Budget and Reporting Branch ("SPBR") of the Division of Risk Management Supervision ("RMS"). Am. Compl. ¶ 4, ECF No. 15; Gilliard Aff. at 1, Defs.' Mot. to Dismiss, Ex. A, ECF No. 18–1. In this lawsuit, Ms. Gilliard asserted that her time at the FDIC was marked by consistent "harassment, discrimination, infliction of severe emotional distress, threats, disparate treatment and more from her supervisors." Pl.'s Mot. for Protective Order at 3, ECF No. 46. She alleged that she was denied several promotions, lost employment responsibilities, received unfavorable performance reviews, and was exposed to a generally hostile work environment, both because of her race and out of retaliation for submitting claims to the Equal Employment Office ("EEO"). *See generally* Am. Compl.

In an attempt to gather evidence in support of her EEO claims, Ms. Gilliard began to surreptitiously record conversations with two of her former supervisors, Janice Butler and Phillip Mento. 2d Am. Compl., ECF No. 53. Ms. Butler and Mr. Mento eventually learned of the recordings, though, and they ordered Ms. Gilliard to stop—going as far to threaten disciplinary action if she continued. *See id.* ¶¶ 45, 67–68. Ms. Gilliard believed that this order was given as further retaliation for engaging in protected EEO activity and constituted additional evidence of a hostile work environment. *See id.* ¶ 69. She therefore filed suit in this Court, alleging claims of racial discrimination, a hostile work environment, retaliation and reprisal for protected EEO activity, prohibited personnel practices, and intentional infliction of extreme emotional and physical distress. *See id.* ¶¶ 10–98.

After filing suit, Ms. Gilliard was instructed by Benjamin Vaughan, her then-supervisor at the FDIC, to attend an investigatory interview about her allegations. *See* Order to Participate

in Investigatory Interview, Defs.' Opp'n to Pl.'s Mot. for Protective Order, Ex. U, ECF No. 52-21. During that interview she was ordered to provide copies or transcripts of all audio recordings that she made of FDIC employees without their permission. *See* Administrative Inquiry at 1–4, Defs.' Opp'n to Pl.'s Mot. for Protective Order, Ex. V, ECF No. 52-22; *see also* Order to Provide Audio Files, Defs.' Opp'n to Pl.'s Mot. for Protective Order, Ex. W, ECF No. 52-23. The FDIC provided three reasons for this demand for the recordings: (1) to perform a complete investigation of Ms. Gilliard's allegations against Mr. Mento and Ms. Butler, (2) because the FDIC suspected that Ms. Gilliard had continued to make recordings in defiance of her superiors' prior order, and (3) because the recordings might contain confidential information about FDIC employees. *See Gilliard II*, 315 F. Supp. 3d at 408; *see also* Second Order to Produce Recordings at 2, Defs.' Opp'n to Pl.'s Mot. for Protective Order, Ex. X, ECF No. 52-24. Ms. Gilliard refused to hand over the recordings, arguing that she had a right to make the tapes, that the FDIC was not entitled to them outside of the normal course of discovery, that the FDIC had provided her with a timetable that was "ridiculous" and "oppressive," and that the FDIC had requested the tapes only to harass her and retaliate against her for bringing her EEO claims. Pl.'s Mot for Protective Order at 1–12.

In an attempt to prevent the FDIC from obtaining the recordings or retaliating against her for failing to release them, Ms. Gilliard asked the Court for a protective order, temporary restraining order, and preliminary injunction. *See* Pl.'s Mot. for Protective Order; Pl.'s Mot. for TRO and Prelim. Inj., ECF No. 47. The Court denied those motions, however. *See Gilliard II*, 315 F. Supp. 3d. at 419. The Court concluded that Ms. Gilliard had failed to show the good cause necessary for a protective order. *Id.* at 412. And with respect to the motion for temporary restraining order and preliminary injunction, the Court held that she had not established that she

3

was likely to suffer irreparable harm, or that the "balancing of the equities and public interest considerations tip[ped] in her favor." *Id.*

Following the Court's decisions, the parties entered into a settlement agreement, voluntarily dismissing Ms. Gilliard's complaint with prejudice. But months later, Ms. Gilliard filed the present motion to seal the entire docket in the case and "the decision regarding the tape recordings." Pl.'s Mot. to Seal, ECF No. 69. In that motion, she argues that her attempts to become a federal employee have been hindered and that offers of employment have been rescinded after Google searches of her name revealed the events of this case, namely her surreptitious recordings of her co-workers. *Id.*

### III. ANALYSIS

Any decision about a party's motion to seal must first begin by "recognizing this country's common law tradition of public access to records of a judicial proceeding." *United States v. Hubbard*, 650 F.2d 293, 314 (D.C. Cir. 1980). "Access to records serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally." *Id.* However, this tradition of access to judicial records is not without its exceptions. "Every court has supervisory power over its own records and files" and access to those documents may be denied where they might become "a vehicle for improper purposes." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978).

Thus, a "district court has wide discretion" in determining whether to seal a record in its entirety or in part. *EEOC v. Nat'l Children's Ctr.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996). When making such a determination, the "starting point" is "a 'strong presumption in favor of public access.'" *Id.* at 1409 (quoting *Johnson v. Greater Southeast Cmty. Hosp. Corp.*, 951 F.2d 1268, 1277 (D.C. Cir. 1991). The D.C. Circuit has then identified "six factors that might act to

4

overcome this presumption: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Id.* at 1409.

Here, Ms. Gilliard does not invoke any of these six factors expressly, but she claims that there is "good cause" for sealing the case, which the Court takes as an implied assertion that the six factors weigh in her favor. Pl.'s Mot. to Seal at 1. The FDIC opposes Ms. Gilliard's motion, arguing that of the six factors, only the third—the fact that someone has objected to disclosure— helps her. *See* Defs.' Opp'n to Pl.'s Mot. to Seal at 10, ECF No. 70. As explained below, the Court agrees with the FDIC.

### A. The need for public access to the documents

The first factor is a product of the presumption just mentioned—the idea that "the public should have access to court proceedings to 'ensur[e] the integrity of judicial proceedings in particular and of the law enforcement process more generally.'" *United States ex rel. Durham v. Prospect Waterproofing, Inc.*, 818 F. Supp. 2d 64, 67 (D.D.C. 2011) (quoting *Hubbard*, 650 F.2d at 315). That presumption "is strongest when 'the documents at issue [are] . . . specifically referred to in a trial judge's public decision.'" *Zapp v. Zhenli Ye Gon*, 746 F. Supp. 2d 145, 148 (D.D.C. 2010) (alteration in original) (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409). That said, "documents filed with the court or introduced into evidence . . . often have a private character, diluting their role as public business." *Id.* (omission in original) (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409). Indeed, public access may be denied "to protect trade secrets, or the privacy and reputation of victims of crimes, as well as to guard against risks to national security interests,

and to minimize the danger of an unfair trial by adverse publicity." *Hubbard*, 650 F.2d at 315–16 (internal citations omitted); *see also Durham*, 818 F. Supp. 2d at 67; *Hamiduva v. Obama*, No. 08-1221, 2015 WL 5176085, at *4–5 (D.D.C. Sept. 3, 2015).

Ms. Gilliard seems to argue that this first factor weighs in her favor here because "[d]iscovery, whether civil or criminal, is essentially a private process [between] the litigants[,] and the courts assume that the sole purpose of discovery is to assist trial preparation." Pl.'s Mot. to Seal at 1 (quoting *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)). But whatever the merits of that position, it does not apply in a case like this one, where the parties involve the Court in the discovery process.

Ms. Gilliard's surreptitious taping of her coworkers, like the entirety of this action, was brought into the record by Ms. Gilliard herself, first by filing a complaint and later by filing a motion for a protective order to prevent having to provide the recordings to the FDIC. As a result of Ms. Gilliard's actions, this information entered into the public record, and this Court had to address these recordings in published opinions. *See Gilliard I*, 302 F. Supp. 3d 257; *Gilliard II*, 315 F. Supp. 3d 402. The fact that these tapes formed a part of this Court's decision weighs heavily against sealing the record, as it is "a fundamental norm of our judicial system . . . that judges' decisions and their rationales must be available to the public." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 675 (D.C. Cir. 2017).

Ms. Gilliard asks this Court to go against the strong presumption in favor of public access to judicial records that arises when the "the documents at issue [are] . . . specifically referred to in a trial judge's public decision." *Zapp*, 746 F. Supp. 2d at 148 (alteration in original) (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409). The public is generally best served, however, by ensuring continued public access to these documents, and Ms. Gilliard has presented insufficient

evidence to establish that the need for public access to the documents is outweighed by any interest that she may have in sealing the opinions and other parts of the docket. Therefore, this first factor weighs against sealing the record.

### B. The extent of previous public access to the documents

The second factor to be considered is the extent of the previous public access to the documents in question. If "a document was accessible to the public" for some period of time, *United States v. Thomas*, 840 F. Supp. 2d 1, 4 (D.D.C. 2011), and if "much of the critical information is already in the public forum" this second factor then "weighs in favor of unsealing the . . . materials," *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 94 (D.D.C. 2014) (omission in original) (quoting *Zapp*, 746 F. Supp. 2d at 149). This factor may be met simply by showing prior public availability on a court docket. *See Upshaw v. United States*, 754 F. Supp. 2d 24, 28–29 (D.D.C. 2010).

Ms. Gilliard makes no arguments as to this issue, and the Court finds that it too weighs against sealing either the entire action or the decision regarding the surreptitious tapes. For one, the complaint, filed in September 2016, was publicly available for over two years before Ms. Gilliard filed her motion to seal. As another district court in this circuit put it, this constitutes an "extended history of public access to the documents at issue" and "weighs heavily against" granting a motion to seal. *Upshaw*, 754 F. Supp. 2d at 28–29.[1]

Additionally, the Court's two opinions in this case have both been published in a major case law reporter. *Gilliard I*, 302 F. Supp. 3d 257; *Gilliard II*, 315 F. Supp. 3d 402. And those opinions have in turn been cited by subsequent decisions in six other cases. *See Wesley v.*

---

[1] The complaint in *Upshaw* was publicly available for one year and eight months at the time the motion to seal was filed, and the final opinion was available for just over one year. *See* 754 F. Supp. 2d at 28.

*Georgetown Univ.*, No. 18-1539, 2018 U.S. Dist. LEXIS 188009, at *7 (D.D.C. Nov. 2, 2018); *Burrell v. Shepard*, 321 F. Supp. 3d 1, 12 (D.D.C. 2018); *Jones v. United States*, 318 F. Supp. 3d 15, 20 (D.D.C. 2018); *Chien v. Sullivan*, 313 F. Supp. 3d 1, 9 (D.D.C. 2018); *Ramirez v. ICE*, No. 18-508, 2019 WL 1765589, at *3 (D.D.C. Apr. 22, 2019) (Contreras, J.); *Kellog v. Evangelical Lutheran Good Samaritan Soc'y*, No. 18-1061, 2018 WL 5719991, at *2 (D. Kan. Nov. 1, 2018). This weighs even further against sealing. Removing Ms. Gilliard's information from the public record now would be a disservice to anyone seeking to reference not only the two published opinions in her case, but also any of the subsequent cases that have cited to them.

Moreover, removing Ms. Gilliard's information from the public record would fail to address the prejudice that she claims to have suffered. Ms. Gilliard asserts that job offers "are being rescinded after Google searches" show that she surreptitiously recorded her coworkers. Pl.'s Mot. to Seal at 1. However, even if the Court granted Ms. Gilliard's motion, information would still be publicly available outside of court records. A search of Ms. Gilliard's name, for example, provides an article on Bloomberg Law entitled "FDIC Employee Must Turn Over Secret Recordings." Michael Greene, *FDIC Employee Must Turn Over Secret Recordings*, Bloomberg Law (June 27, 2018, 5:18 PM), https://news.bloomberglaw.com/e-discovery-and-legal-tech/fdic-employee-must-turn-over-secret-recordings. Of course, the Court has no power to compel Bloomberg to remove that article from its site, so Ms. Gilliard's desire to seal the record in this case is misplaced. Regardless of whether the record is sealed, information about Ms. Gilliard's case will remain publicly available. In other words, "[t]he Court cannot unring this bell." *Upshaw*, 754 F. Supp. 2d at 29. Accordingly, this second factor weighs against sealing the record.

## C. Privacy and property rights at issue

The "third, fourth, and fifth *Hubbard* factors are interrelated, and require courts to look at the strength of the property and privacy interests involved, and to take into account whether anyone has objected to public disclosure and the possibility of prejudice to that person." *Id.* First, although not dispositive, the "fact that a party moves to seal the record weighs in favor of the party's motion." *Id.*; *see also United States v. Murray*, No. 06-176, 2018 U.S. Dist. LEXIS 101022, at *9 (D.D.C. June 15, 2018) (holding that this factor is not dispositive). Ms. Gilliard, a party to this case, has filed a motion to seal the record, which alone is sufficient for that factor to weigh in favor of Ms. Gilliard's claim. "However, because there will necessarily be a party objecting to disclosure whenever a court is faced with a motion to seal, the inquiry does not end there: the district court must assess whether that party would be prejudiced by disclosure." *Upshaw*, 754 F. Supp. 2d at 29. It is here that Ms. Gilliard's motion falls short.

In order to determine whether a party will be prejudiced by disclosure, the Court must move on to the fourth factor and assess "the strength of any property or privacy interests voiced by the moving party." *Durham*, 818 F. Supp. 2d at 68. This is not analyzed by looking at the effect that disclosure of the record "would have on the party's property and privacy interests generally," but rather by "examining the objecting party's privacy interest" in the record. *Friedman v. Sebelius*, 672 F. Supp. 2d 54, 60 (D.D.C. 2009); *see also Hubbard*, 650 F.2d at 320; *Durham*, 818 F. Supp 2d at 68; *United States ex rel. Grover v. Related Cos., LP*, 4 F. Supp. 3d 21, 26 (D.D.C. 2013). The D.C. Circuit has narrowly construed the privacy interests that would justify sealing the record, limiting them to documents that would "reveal the intimate details of individual lives, sexual or otherwise"—a higher standard than mere embarrassment. *Hubbard*, 650 F.2d at 324; *see also Gardner v. Newsday, Inc. (In re Newsday, Inc.)*, 895 F.2d 74, 79 (2d

Cir. 1990); *In re New York Times Co.*, 585 F. Supp. 2d 83, 93 n.14 (D.D.C. 2008). Indeed, the circuit court has never recognized a privacy right merely to allow a party "to get on with [their] life." *In re New York Times Co.*, 858 F. Supp 2d at 93. Reputational harm alone is insufficient. *Id.*

In the present matter, Ms. Gilliard alleges only reputational harm. Pl.'s Mot. to Seal at 1. Indeed, Ms. Gilliard has failed to "articulate [a] privacy interest[] in the specific pleadings themselves" that goes beyond a general desire to keep one's identity secret. *Durham*, 818 F. Supp. 2d at 68. Moreover, while Ms. Gilliard suggests "that the continued disclosure of the contents of [her] case may 'impair' [her] ability to secure employment in the future . . . the 'prejudice' has less to do with the contents of the documents themselves than the fact that Plaintiff commenced suit in the first place." *Upshaw*, 754 F. Supp. at 29. And Ms. Gilliard herself introduced the issue of the tapes into the public record by asking this Court to grant a protective order, a temporary restraining order, and a preliminary injunction related to the recordings. This severely undercuts Ms. Gilliard's claim, because a party who "introduce[s] or re-introduce[s] some of the details [of a case] into the public forum [her]self" diminishes any claim for privacy. *In re New York Times Co.*, 858 F. Supp 2d at 93.

Finally, the Court must consider the fifth factor: "whether disclosure of the documents will lead to prejudice in future litigation" if the moving party's motion is denied. *Friedman*, 672 F. Supp. 2d at 60. The only prejudice relevant to this factor is prejudice regarding "fair trial rights." *Hubbard*, 650 F.2d at 313. As noted above, Ms. Gilliard asserts that she has and will continue to lose out on federal government employment opportunities due to the presence of this case. Pl.'s Mot. to Seal at 1. She does not, however, provide any reasons why continued

disclosure would lead to prejudice in any future litigation. This Court thus finds that this factor does not weigh in favor of sealing this case.

All told, then, while it is true that Ms. Gilliard herself has objected to disclosure, in the context of a motion to seal there will almost always be a party who objects to disclosure, which severely limits the strength of that factor. *See Upshaw*, 754 F. Supp. 2d at 29. Meanwhile, Ms. Gilliard has failed to persuade this Court that there are sufficient privacy or property interests at issue in this case to justify sealing any part of the record. Nor has she shown that she will suffer prejudice in future litigation if the record remains unsealed. The fourth and fifth factors therefore do not weigh in her favor.

### D. The purpose for which the documents were introduced during judicial proceedings

The final factor concerns itself with the nature of the records and why they were introduced into the case in the first place. *Grover*, 4 F. Supp. 3d at 28. "The more relevant a pleading is to the central claims of the litigation, the stronger the presumption of unsealing the pleading becomes." *Id.* There is "less of a pressing concern to unseal pleadings if they are not relevant to the claims," *Durham*, 818 F. Supp. 2d at 69, such as if the documents were not described or expressly relied on in the trial judge's decision or if the documents were not used in subsequent proceedings, *Hubbard*, 650 F.2d at 321.

Here, the issue of the tape recordings was relevant to the merits of Ms. Gilliard's claims, and it was central to the resolution of her motions for a protective order, temporary restraining order, and preliminary injunction. Indeed, as the Court has already said, Ms. Gilliard herself brought this issue before the Court and asked the Court for relief on the issue. As such she "explicitly intended the Court to rely on these materials in adjudicating [the] dispute." *Berliner Corcoran & Rowe LLP v. Orian*, 662 F. Supp. 2d 130, 135 (D.D.C. 2009). And, of course, the

Court ultimately had to rely on the materials when deciding whether to grant her the relief that she requested. *Gilliard I*, 302 F. Supp. 3d 257; *Gilliard II*, 315 F. Supp. 3d 402. Because of Ms. Gilliard's own litigation conduct, this information was central to the case. The sixth factor thus weighs against sealing the record.

## IV. CONCLUSION

In sum, Ms. Gilliard has failed to overcome the strong presumption against sealing judicial records, as five of the six *Hubbard* factors favor continued public disclosure of this case. Ms. Gilliard's motion to seal is therefore denied. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 23, 2019                                RUDOLPH CONTRERAS
                                                    United States District Judge